EVELYN M. SHIRLEY                                                PLAINTIFF

VS.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security                                  DEFENDANT

## MEMORANDUM OPINION
## AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Evelyn M. Shirley ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 15) and Defendant (DN 18) have filed a Fact and Law Summary.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 13). By Order entered June 14, 2013 (DN 14), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.

<u>FINDINGS OF FACT</u>

Plaintiff filed applications for Disability Insurance benefits and Supplemental Security Income payments on December 20, 2011 (Tr. 11, 200-206, 207-213). Plaintiff alleged that she became disabled on July 1, 2010 as a result of bipolar disorder, suicidal ideation, history of suicide attempts, high blood pressure, and intermittent back problems (Tr. 11, 200-206, 207-213, 306). These claims were denied initially on March 6, 2012, and upon reconsideration on May 8, 2012 (Tr. 11). Plaintiff filed a request for a hearing and, thereafter, Administrative Law Judge D. Lyndell Pickett ("ALJ") conducted a hearing on July 11, 2012 in Louisville, Kentucky (Tr. 11). Plaintiff was present and represented by Trevor A. Smith, an attorney (Tr. 11). Also present and testifying was William R. Irvin, an impartial vocational expert (Tr. 11).

In a decision dated August 7, 2012, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 11-22). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since July 1, 2010, the alleged onset date (Tr. 13). At the second step, the ALJ determined that Plaintiff's cervical radiculopathy, obesity, bipolar disorder, obsessive-compulsive disorder, and polysubstance abuse in full sustained remission are "severe" impairments within the meaning of the regulations (Tr. 14). Also, at the second step, the ALJ observed that Plaintiff has some history of hypertension; however, he did not find hypertension to be a severe impairment (Tr. 14). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 14).

At the fourth step, the ALJ found Plaintiff has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she may never climb

ladders, ropes or scaffolds; frequently, but not constantly, balance, stoop, kneel, and crouch; and must avoid all exposure to hazards like dangerous machinery and unprotected heights (Tr. 15). Additionally, the ALJ found that Plaintiff has the mental residual functional capacity to perform routine, repetitive, unskilled and low stress work, which requires no strict production quotas (Tr. 15). Lastly, the ALJ determined that Plaintiff may have no contact with the public and only occasional contact with supervisors and coworkers in a task-oriented environment (Tr. 15). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform her past relevant work as a fast wood worker, factory clothes dryer, laundry worker, and daycare worker (Tr. 20).

The ALJ proceeded to the fifth step where he considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 21). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in significant numbers in the national economy (Tr. 21). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from July 1, 2010, through August 7, 2012, the date of the ALJ's decision (Tr. 21-22).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 33). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3).

CONCLUSIONS OF LAW

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II

Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

"[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

(1) Is the claimant engaged in substantial gainful activity?

(2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

(3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

(4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

(5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-3). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health and Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health and Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health and Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health and Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

Plaintiff challenges the ALJ's Finding No. 5, which addresses the fourth step in the five-step sequential evaluation process promulgated by the Commissioner (DN 15, Plaintiff's Fact and Law Summary at Pages 2-11).[1] Here, the ALJ found that Plaintiff has the residual functional capacity

---

[1] At the fourth step of the sequential evaluation process, the Administrative Law Judge makes findings regarding the claimant's residual functional capacity, the physical and mental demands of the claimant's past relevant work, and the claimant's ability to return to the past relevant work. See 20 C.F.R. § 416.920(e). The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946. This finding is based on a consideration of medical source statements and all other evidence in the case record. 20 C.F.R.

to perform medium work[2], except she may never climb ladders, ropes or scaffolds; frequently, but not constantly, balance, stoop, kneel, and crouch; and must avoid all exposure to hazards like dangerous machinery and unprotected heights (Tr. 15). Additionally, the ALJ found that Plaintiff has the mental residual functional capacity to perform routine, repetitive, unskilled and low stress work, which requires no strict production quotas (Tr. 15). Lastly, the ALJ determined that Plaintiff may have no contact with the public and only occasional contact with supervisors and coworkers in a task-oriented environment (Tr. 15).

Plaintiff argues that Finding No. 5 is not supported by substantial evidence because the ALJ made selective findings without a rationale for rejecting those findings that support Plaintiff's claim of disability (DN 15, Plaintiff's Fact and Law Summary at Pages 2-11). Plaintiff also argues that the ALJ failed to consider her subjective complaints of pain when making the residual functional capacity determination (DN 15, Plaintiff's Fact & Law Summary at Pages 2-11). More specifically, Plaintiff maintains that due to her physical and mental conditions, she is unable to perform even unskilled sedentary work (DN 15, Plaintiff's Fact & Law Summary at Pages 2-11). With regard to her physical impairments, Plaintiff asserts that she experiences severe neck pain, which radiates into

---

§§ 416.929, 416.945(a). Thus, in making the residual functional capacity finding the Administrative Law Judge must necessarily assign weight to the medical source statements in the record as well as consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. §§ 416.927(c), 416.929; Social Security Ruling 96-7p.

[2] The Social Security Regulations define "medium work" in the following manner:

> Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 404.1567(b).

her chest and left shoulder, and as a result of this pain, she cannot lift more than 10 or 20 pounds or reach overhead (Tr. 16, 61-62). As to her mental impairments, Plaintiff asserts that she suffers from severe depression, obsessive-compulsive disorder and anxiety, and she has a history of substance abuse (Tr. 16, 50-60). In addition, she alleges auditory hallucinations, racing thoughts, mood swings, suicidal ideation and paranoia, which interfere with her sleep and ability to get along with others (Tr. 16, 50-60). Because of her alleged mental impairments, Plaintiff asserts that she can maintain concentration on an object for no more than 30 minutes at one time (Tr. 16, 50-60). Lastly, Plaintiff maintains that the ALJ's determination concerning her ability to perform medium work is faulty, because it is partially based on the ALJ's improper assessment of her credibility (DN 15, Plaintiff's Fact and Law Summary at Pages 8-9).

In assessing a claimant's residual functional capacity, the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling 96-7p. A claimant's statement that he or she is experiencing pain or other symptoms will not, taken alone, establish that he or she is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a).

In determining whether a plaintiff suffers from debilitating pain, the two-part test set forth in Duncan v. Sec'y of Health and Human Servs., 801 F.2d 847, 853 (6th Cir. 1986), applies. First, the Administrative Law Judge must examine whether there is objective medical evidence of an underlying medical condition. If there is, then the Administrative Law Judge must determine: "(1) whether objective medical evidence confirms the severity of the alleged pain arising from the

condition; or (2) whether the objectively established medical condition is of such severity that it can reasonably be expected to produce the alleged disabling pain." Id. When, as in this case, the reported pain or symptoms suggest an impairment of greater severity than can be shown by objective medical evidence, the Administrative Law Judge will consider other information and factors which may be relevant to the degree of pain alleged. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

According to Social Security Ruling 96-7p, an Administrative Law Judge must consider the objective medical evidence as well as the following factors when assessing the credibility of an individual's statements: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate the pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Here, the ALJ was persuaded by the absence of objective medical evidence supporting Plaintiff's symptoms, her treatment history, and her own testimony regarding her daily activities (Tr. 15-20). More importantly, the ALJ found Plaintiff's statements–concerning the intensity, persistence, and limiting effects of her symptoms–not to be credible to the extent they are inconsistent with her residual functional capacity finding. It is of course for the Administrative Law Judge, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 247 (6th Cir. 2007) (citing Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th

Cir. 1990); Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 538 (6ᵗʰ Cir. 1981)).  However, the Administrative Law Judge is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility."  Rogers, 486 F.3d at 247 (*citing* Social Security Ruling 96-7p, 1996 WL 374186, *4 (July 2, 1996)).   "In evaluating complaints of pain, an Administrative Law Judge may properly consider the credibility of the claimant."  Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6ᵗʰ Cir. 1997) (*quoting* Kirk v. Sec'y of Health and Human Servs., 667 F.2d 524, 538 (6ᵗʰ Cir. 1981)).  Furthermore, an Administrative Law Judge's findings based on the credibility of the claimant are to be accorded great weight and deference, particularly since an Administrative Law Judge is charged with the duty of observing a witness' demeanor and credibility.  Walters, 127 F.3d at 531 (*citing* Villarreal v. Sec'y of Health and Human Servs., 818 F.2d 461, 463 (6ᵗʰ Cir. 1987)).  Nevertheless, an Administrative Law Judge's assessment of a claimant's credibility must be supported by substantial evidence.  Beavers v. Sec'y of Health, Educ. and Welfare, 577 F.2d 383, 386-87 (6ᵗʰ Cir. 1978).

Plaintiff contends the ALJ erred in not fully crediting her subjective complaints of pain and reported limitations (DN 15, Plaintiff's Fact and Law Summary at Pages 2-11).  First, Plaintiff claims that the ALJ failed to take into account her treatment history as a whole and to discuss the side effects she experiences from her medications (DN 15, Plaintiff's Fact and Law Summary at Pages 5-7).  The Court disagrees.

The treatment a plaintiff has sought for the allegedly disabling mental and physical impairments is a factor the Administrative Law Judge may consider in assessing plaintiff's subjective complaints.   20 C.F.R. §§ 404.1529(c)(3)(V) and 416.929(c)(3)(v). Here, the ALJ observed that "the course of medical treatment and use of medication in this case are not consistent

with the disabling symptoms as described by the claimant" (Tr. 17). Moreover, the ALJ noted that "[t]reatment of the claimant's physical and mental conditions has been conservative" (17). With regard to her physical impairments, the ALJ recognized the following:

> It is noted that the claimant has not been hospitalized for a significant period of time and surgical intervention has not been necessary for any of her impairments. Specifically, as to her neck impairment, the claimant has received some treatment from her family practitioner, including the prescription of Neurontin. Yet, the office visit notes reflect numerous occasions on which the claimant did not specify any particular complaint other than medication refills for her hypertension and GERD, which contrasts with the current claim of ongoing, disabling symptoms since the alleged onset date. (Exhibits 14F, 17F and 18F). Additionally, the claimant has been seen in the emergency room on only 2 occasions for acute pain since the alleged onset date, but there is no evidence of hospitalization for any period of time. It is noted that both of these visits are in January 2011, at the time of onset of her cervical symptoms. (Exhibits 12F and 13F). Moreover, she has not been seen by an orthopedic surgeon or neurosurgeon for evaluation of her neck pain, she has had no epidural injections, and does not see a pain specialist. It also is noted that the claimant does not use an assistive device to walk or wear a brace and she has not participated in physical therapy or received care from a chiropractor. Moreover, she has not received any treatment for her obesity.

(Tr. 17-18). The ALJ discounted Plaintiff's credibility, because her subjective complaints with regard to her physical impairments are not well-supported by the medical evidence of record. Plaintiff testified that her excruciating neck pain prevented her from lifting more than 10 or 20 pounds or reach overhead, but as the ALJ noted, there is no medical evidence in the record to corroborate the severity of her alleged neck pain (Tr. 16-18). In addition, Plaintiff's alleged physical symptoms are contradicted by her daily activities, as will be discussed below.

With regard to her mental impairments, the ALJ observed the following:

> [T]he claimant has received fairly regular outpatient therapy and she is prescribed psychotropic medications. However, the record reflects that treatment has been effective in treating her symptoms. In

December 2011, the treatment records reflect that she was stable on present meds and her mood was stable. Moreover, in May 2012, she reported that she was doing better since her medication change the previous month. She indicated that she was having no racing thoughts, mood swings or psychosis and she wanted to continue working part-time. (Exhibits 14F, 17F and 18F). Further, she has not been seen in the emergency room or hospitalized for any period of time related to her mental health issues since the alleged onset date. Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. Yet a review of the record in this case reveals no restrictions recommended by the treating doctor. All the foregoing, indicate that the claimant's allegations of symptoms and limitations is not as severe as alleged.

(Tr. 18). In light of the ALJ's observations, the Court concluded that the ALJ conducted a thorough review of the record as a whole and properly found Plaintiff not to be fully credible. While the ALJ did not list every single medication Plaintiff uses, he explicitly addressed Plaintiff's use of medications and her own testimony that she was doing better in May 2012 due to a medication change (Tr. 18). It is well-established that an Administrative Law Judge is not required to discuss each and every piece of evidence in the record for his or her decision to stand. *See* Paskewitz v. Astrue, 2012 WL 5845357, *11 (N.D. Ohio 2012) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered" (citations omitted). The Administrative Law Judge is not required to discuss each piece of data in his or her opinion, so long as he or she considers the evidence as a whole and reaches a reasoned conclusion. *See* Boseley v. Comm'r of Soc. Sec., 397 F. Appx. 195, 199 (6th Cir. 2010).

In addition to the above, the ALJ discounted Plaintiff's credibility based on the inconsistency of her daily activities and the residual functional capacity of medium work and are inconsistent with Plaintiff's allegations of impairments (Tr. 18). A plaintiff's level of daily activity is a factor which

the Administrative Law Judge may consider in determining the extent to which pain is of disabling severity. 20 C.F.R. §§ 404.1529(c)(3)(I), 416.929(c)(3)(I); <u>Bogle v. Sullivan</u>, 998 F.2d 342, 348 (6th Cir. 1993); <u>Blacha v. Sec'y of Health and Human Servs.</u>, 927 F.2d 228, 231 (6th Cir. 1990). (As a matter of law, an Administrative Law Judge may consider household and social activities in evaluating complaints of disabling pain). In the present matter, Plaintiff's activities during the relevant time period involved working at a daycare 15 hours per week, walking four blocks to the bus stop to get to work, and attending two or three AA meetings per week (Tr. 18, 53-65). Moreover, the ALJ acknowledged that Plaintiff manages her own finances and does her own shopping (Tr. 18, 53-65). Also, during the mental consultative examination on February 13, 2012, Plaintiff reported that she enjoyed being around other people and spent a good portion of her day talking with others (Tr. 18, 570-573). This level of activity, while not extensive, is not indicative of disabling pain. *See* <u>Crisp v. Sec'y of Health and Human Servs.</u>, 790 F.2d 450, 453 (6th Cir. 1986). Plaintiff maintains that her daily activities do not amount to "substantial gainful activity," and a result, she is not able to perform medium work as set forth under the ALJ's residual functional capacity determination. The Court agrees that the mere fact Plaintiff is able to maintain a range of daily activities does not mean she is not disabled. However, the ALJ did not analyze Plaintiff's credibility in terms of her daily activities alone but also looked at her medical records and treatment regimen, emotional condition, appearance and demeanor, and overall testimony (Tr. 15-18).

Also, Plaintiff challenges the ALJ's consideration of her work history in discrediting her credibility (DN 15, Plaintiff's Fact and Law Summary at Page 6). More specifically, Plaintiff argues that the ALJ failed to consider special conditions that exist for Plaintiff in the workplace as set forth under 20 C.F.R. § 404.1573(c) (DN 15, Plaintiff's Fact and Law Summary at Page 6). According

to Plaintiff's testimony during the administrative hearing, she stated that her employer at the day care made a special accommodation for her not to have any contact with the children but instead she would be responsible for cooking, washing dishes, doing laundry, and any other cleaning duties (Tr. 16-18, 66). Plaintiff's argument that the ALJ failed to take this special accommodation into account is misplaced, because the ALJ actually considered these duties as Plaintiff's daily activities (Tr. 16-18).

Lastly, Plaintiff makes a general challenge to the ALJ's determination that Plaintiff exhibited "generally unpersuasive appearance and demeanor" during her testimony at the hearing (DN 15, Plaintiff's Fact and Law Summary at Pages 8-9). To be more specific, the ALJ provided the following credibility finding:

> Another factor influencing the conclusions reached in this decision is the claimant's generally unpersuasive appearance and demeanor while testifying at the hearing. The claimant was capable of answering questions and relating adequately with the undersigned without any apparent interference or mental or physical symptoms. It is emphasized that this observation is only one among many being relied on in reaching a conclusion regarding the credibility of the claimant's allegations and the claimant's residual functional capacity.

(Tr. 19). As discussed above, an Administrative Law Judge's credibility determinations about a claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility. Walters, 127 F.3d at 531. Moreover, the "[Administrative Law Judge] is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" Rogers, 486 F.3d at 247. While "unpersuasive appearance and demeanor" alone is not sufficient to discredit Plaintiff's credibility, it is one of many factors used in assessing credibility as set forth under Social Security Ruling 96-7p. The ALJ explicitly noted that this observation was only one among many factors being relied on in making

a credibility finding (Tr. 19). As a result, Plaintiff's challenge is without merit and the Court will not second-guess the ALJ's credibility determinations under Finding No. 5. In sum, the Court finds that the ALJ's credibility determinations are supported by substantial evidence and comport with applicable law.

Next, Plaintiff argues that the ALJ failed to provide reasons for rejecting the opinion of Jessica Huett, Psy. D. (DN 15, Plaintiff's Fact and Law Summary at Pages 9-10). In addition, Plaintiff argues that the ALJ erred in according great weight to the opinions of state agency psychological consultants (DN 15, Plaintiff's Fact and Law Summary at Pages 10-11). In opposition, the Commissioner maintains that the ALJ properly assessed the opinions of the medical sources as prescribed under applicable law (DN 15, Commissioner's Fact and Law Summary at Pages 11-12). The Court agrees with the Commissioner.

The rule on controlling weight applies when a "treating source" renders a "medical opinion" that is both well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Social Security Ruling 96-2p; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Bogle v. Sullivan, 998 F.2d 342, 347-348 (6th Cir. 1993); Crouch v. Sec'y of Health and Human Servs., 909 F.2d 852, 857 (6th Cir. 1990). If the medical opinion of a treating source is not entitled to controlling weight, then the Administrative Law Judge must determine how much weight it should be accorded. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Social Security Ruling 96-2p. While there are no treating sources in the present matter, the ALJ had to consider medical opinions from consultative examiners and non-examining state agency psychological consultants and give "good reasons" for rejecting or adopting the opinions.

Furthermore, under certain circumstances the opinions of non-examining State agency medical or psychological consultants may be given greater weight than the opinions of treating or examining sources. Social Security Ruling 96-6p, 1996 WL 374180, *3 (July 2, 1996). "For example, the opinion of a State agency medical or psychological consultant or other program physician or psychologist may be entitled to greater weight than a treating source's medical opinion if the State agency medical or psychological consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source." Social Security Ruling 96-6p, 1996 WL 374180, *3.

With regard to Dr. Huett, the ALJ gave "little weight" to her opinion (Tr. 19-20). Plaintiff maintains that the ALJ rejected Dr. Huett's opinion without providing any basis for rejecting it; however, Plaintiff fails to recognize the ALJ's extensive discussion with regard to Dr. Huett. The ALJ acknowledged Dr. Huett's conclusions, as set forth in the ALJ's opinion:

> Dr. Huett concluded that the claimant had the following work-related limitations: marked limitations in her ability to sustain attention and concentration towards the performance of simple and repetitive tasks; moderate to marked limitations in her ability to tolerate stress and pressure of day-to-day employment and respond appropriately to supervision, coworkers and work pressures in a work setting; and slight impairment in her ability to understand, remember and carry out instructions towards performance of simple repetitive tasks.

(Tr. 19). The ALJ found the aforementioned conclusions contrary to Dr. Huett's assigning Plaintiff a GAF score of 51 to 55, which indicates only moderate symptoms or impairment in social or occupational functioning (Tr. 19-20).

Furthermore, the ALJ determined that Dr. Huett's opinion was inconsistent with Plaintiff's daily activities, including her current capacity to work part-time, and her conservative treatment

history (Tr. 21). The ALJ also observed that Plaintiff's mental health treatment records reflect that she is doing much better and her moods are stable (Tr. 21). As a result, the ALJ's decision to afford "little weight" to the opinion of Dr. Huett is supported by substantial evidence and comports with applicable law.

With regard to the state agency psychological consultants, the ALJ afforded "great weight" to their assessments (Tr. 20). The ALJ discussed the assessment performed on March 4, 2012 and affirmed on May 2, 2012, in which the state agency psychological consultants determined the following:

> [C]laimant is capable of understanding, remembering and carrying out simple and one and two step instructions; sustaining attention for extended periods of two hour segments for simple tasks; relating adequately to coworkers and supervisors with occasional (not more than 1/3 of the time) contact with the public; and adapting to routine changes as needed within the above parameters. (Exhibits 7A, 8A, 9A and 10A).

(Tr. 20). The ALJ properly gave weight to the assessment completed by the state agency psychological consultants, as laid out above, because they had the benefit of reviewing the record as a whole and their residual functional capacity assessment is consistent with the record.

Overall, the ALJ properly adopted the residual functional capacity determination set forth by the state agency psychological consultants and added additional postural and environmental limitations, based on the X-ray of Plaintiff's cervical spine and in giving some weight to the subjective complaints of Plaintiff (Tr. 19). As a result, the ALJ adequately reviewed the evidence in the record as a whole and his determination under Finding No. 5 is supported by substantial evidence and comports with applicable law.

Plaintiff challenges ALJ's Finding No. 10, which addresses the fifth step in the five-step sequential evaluation process promulgated by the Commissioner (DN 15, Plaintiff's Fact and Law Summary at Page 11). After considering Plaintiff's age, education, work experience, and residual functional capacity, including testimony from the vocational expert, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform as explained in 20 C.F.R. §§ 404.1569 and 404.1569(a) (Tr. 21). More specifically, the ALJ found that Plaintiff is capable of performing representative occupations such as cleaner, packer, and store laborer (Tr. 21). Plaintiff does not provide specific arguments as to why Finding No. 10 is not supported by substantial evidence (DN 15, Plaintiff's Fact and Law Summary at Page 11). Instead, she maintains that Finding No. 10 is not supported by substantial evidence, because of the reasons set forth under the challenge to Finding No. 5 (DN 15, Plaintiff's Fact and Law Summary at Page 11).

At the fifth step, the burden of proof shifts to the Commissioner as explained below:

> The burden of proof in a claim for Social Security benefits is upon the claimant to show disability which prevents her from performing any substantial gainful employment for the statutory period. Once, however, a prima facia case that claimant cannot perform her usual work is made, the burden shifts to the [Commissioner] to show that there is work in the national economy which she can perform.

Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980) (*citing* Hephner v. Mathews, 574 F.2d 359, 361 (6th Cir. 1978); Garrett v. Finch, 436 F.2d 15, 18 (6th Cir. 1970)). The Commissioner may meet this burden by relying on expert vocational testimony received during the hearing to determine what jobs exist in significant numbers in the economy which plaintiff can perform considering the combination of his or her limitations. *See* Born v. Sec'y of Health and Human Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Davis v. Sec'y of Health and Human Servs., 915 F.2d 186, 189 (6th Cir. 1990); Varley

v. Sec'y of Health and Human Servs., 820 F.2d 777, 779 (6th Cir. 1987). In making a determination at the fifth step of the five-step sequential evaluation process, the ALJ must consider a claimant's age, education, past relevant work experience, and residual functional capacity. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Notably, a vocational expert's testimony can constitute substantial evidence to support the Commissioner's finding that a plaintiff is capable of performing a significant number of jobs existing in the local, regional, and national economies, Bradford v. Sec'y of the Dep't of Health and Human Servs., 803 F.2d 871, 874 (6th Cir. 1986) (per curiam), so long as a vocational expert's testimony is based on a hypothetical question which accurately portrays the plaintiff's physical and mental impairments. Varley v. Sec'y of Health and Human Servs., 820 F.2d 777, 779 (6th Cir. 1987). The hypothetical question is not erroneous where at least one doctor substantiates the information contained therein. Hardaway v. Sec'y of Health and Human Servs., 823 F.2d 922, 927-28 (6th Cir. 1987) (per curiam). Moreover, there is no requirement that the Administrative Law Judge's hypothetical question to the vocational expert reflect plaintiff's unsubstantiated complaints.

For reasons discussed above, Plaintiff has failed to successfully challenge the ALJ's residual functional capacity finding. As mentioned earlier, the ALJ found that Plaintiff has the residual functional capacity to perform medium work which is impeded by additional limitations (Tr. 15, 21). Because Plaintiff's residual functional capacity finding did not parallel the criteria of Medical-Vocational Rule 203.22, the ALJ only used the medical-vocational rules as a framework for decision-making (Tr. 21). To determine the extent to which these limitations erode the unskilled medium occupational base, the ALJ asked the vocational expert whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional

capacity (Tr. 21). The vocational expert testified that Plaintiff would be able to perform the requirements of representative occupations including: cleaner, packer, and store laborer (Tr. 21). While Plaintiff does not provide specific arguments as to why she challenges Finding No. 10, she challenges Finding No. 10 based on the residual functional capacity determination under Finding No. 5. As discussed above, the ALJ's residual functional capacity determination is supported by substantial evidence and moreover, the ALJ incorporated this residual functional capacity in his hypothetical question to the vocational expert (Tr. 21, 65-70). Because the hypothetical question accurately portrays Plaintiff's physical and mental impairments, the vocational expert's testimony that there are jobs that exist in significant numbers the Plaintiff can perform constitutes substantial evidence.

Based on the foregoing reasons, the ALJ properly relied on the testimony of the vocational expert to find Plaintiff can perform jobs that exist in significant numbers in the national economy (Tr. 21). As a result, the Court finds that the ALJ's determination under Finding No. 10 is supported by substantial evidence in the record and fully comports with applicable law.

In relation to the ALJ's determination of "not disabled," at the fifth step of the five-step sequential evaluation process promulgated by the Commissioner, Plaintiff challenges Finding No. 9 (DN 15, Plaintiff's Fact and Law Summary Page 11). Plaintiff does not provide specific arguments as to why she challenges Finding No. 9. Instead, Plaintiff's challenge to Finding No. 9 is based on the arguments relating to the challenge to the residual functional capacity determination under Finding No. 5. Under Finding No. 9, the ALJ concluded the following:

> Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-

41 and 20 CFR Part 404, Subpart P, Appendix 2).

(Tr. 21).

As expressed above, the ALJ found that Plaintiff suffered from limitations beyond those accounted for by the Medical-Vocational Guidelines and therefore, used the rules merely as a "framework" in determining whether Plaintiff could perform other work (Tr. 21). The ALJ relied on the testimony of the vocational expert, in determining that there are significant number of jobs in the national economy that Plaintiff could perform (Tr. 21).

In relevant part, Social Security Ruling 82-41 reads, "When the issue of skills and their transferability must be decided, the adjudicator or ALJ is required to make certain findings of fact and include them in the written decision," and "When a finding is made that a claimant has transferable skills, the acquired work skills must be identified." 1982 WL 31389, * 7 (January 1, 1982); *see also* <u>Wilson v. Comm'r of Soc. Sec.</u>, 378 F.3d 541, 549 (6th Cir. 2004). The Commissioner has interpreted that these passages apply only when an Administrative Law Judge relies solely on the Medical-Vocational Guidelines, also known as the grid, in which cases the Administrative Law Judge must ascertain whether the claimant has transferable skills in order to apply the grid. *See* <u>Wilson</u>, 378 F.3d at 549. Here, the ALJ merely used the grid as a "framework" in determining that Plaintiff is not disabled and therefore, transferability of job skills is not essential to the determination of disability. In sum, the ALJ's determination under Finding No. 10 is supported by substantial evidence and comports with applicable law.

Lastly, with regard to Finding No. 11, Plaintiff makes a broad challenge to the ALJ's ruling that Plaintiff has not been under a disability, as defined in the Social Security Act, from July 1, 2010, through August 7, 2012 (DN 15, Plaintiff's Fact and Law Summary at Page 11). Based on the

analysis the Court has set forth with regard to Finding Nos. 5, 9, and 10, the ALJ did not err in finding that Plaintiff has not been under a disability from July 1, 2010 through August 7, 2012. Because the Court concludes that Plaintiff's challenge to Finding Nos. 5, 9, and 10 fails, Plaintiff's argument with regard to Finding No. 11 holds no merit.  In sum, the Court has reviewed the record and finds that the ALJ's determinations under Finding Nos. 5, 9, and 10 are supported by substantial evidence in the record and fully comport with applicable law.

<u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**, pursuant to 42 U.S.C. § 405(g).

This is a final and appealable Order and there is no just cause for delay.

Copies to:    Counsel of Record